UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MARVIN GODFREY | CIVIL ACTION NO. 19-1560 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| HONEYWELL INTERNATIONAL, INC. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Plaintiff Marvin Godfrey ("Godfrey") has brought this suit for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Before the Court is a motion for summary judgment, filed by Defendant Honeywell International, Inc. ("Honeywell"). The motion has been fully briefed. For the reasons below, the motion [Record Document 33] is **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

This case arises out of Godfrey's employment at Honeywell's Shreveport facility, which serves as a primary catalyst production facility of products used in the oil and gas industry. Honeywell hired Godfrey in 2005. Record Document 38-1 ¶ 1. Starting in November 2014, Godfrey held the position of Utilities Operator/Tech III and reported to Utilities and Environmental ("U/E") Manager, Jon Ousley ("Ousley"). *Id.* ¶ 2. As an operator, Godfrey was responsible for supporting the U/E operations of the Shreveport facility. *Id.* ¶ 4. The U/E Department is separated into four areas: frame press, recycled water treatment plant ("RWT"), roving utilities, and boiler house operations. *Id.* ¶ 5. Operators were required to recertify in these four areas every year. Record Document 33-2 at 110. It is uncontested that Godfrey's employment was terminated, but the parties differ on the reasons for his termination.

Godfrey, an African American man, claims that he was terminated as a result of purposeful racial discrimination and in retaliation for his extended leave caused by a workplace injury. *See* Record Document 1. Godfrey experienced his workplace injury on July 21, 2015. Record Document 38-1 ¶ 7. After his injury, Honeywell provided Godfrey with an extended leave of absence until September 12, 2016. *Id.* ¶ 8. In total, Godfrey received 12 weeks of leave under the FMLA plus an additional 11 months of leave to recover from his injury. *Id.* ¶ 9. Godfrey did not perform any work for Honeywell during his leave of absence. *Id.* ¶ 10. Godfrey returned to work on September 12, 2016, and he maintained the same work position and supervisor as prior to his leave. *Id.* ¶¶ 11–12.

After his return to work, Godfrey claims that he was denied overtime opportunities and his vacation benefits, both of which were being granted to white employees. Record Document 1 ¶¶ 9–12. Godfrey alleges that he complained in September, November, and December 2016 about the alleged discrimination and retaliation he was experiencing regarding the denial of his overtime and vacation benefits after his return from FMLA leave. *Id.* ¶¶ 16–18; Record Document 38-3 ¶ 5. Soon after, Godfrey contends that he was issued a Letter of Expectations ("LOE") in March 2017, which set forth unrealistic expectations about his work performance; he avers that he was told that the LOE was not disciplinary in nature and the target dates for completing certain tasks could be adjusted. Record Document 38-3 ¶¶ 6–7. Despite satisfying the terms of the LOE, Godfrey asserts that the retaliation intensified when Ousley placed him on a performance improvement plan ("PIP") in March 2018. *Id.* ¶ 8. Godfrey attests that he complained to Ousley and Alynia Roberson ("Roberson"), Honeywell's Human Resources Manager, that he believed the PIP was in retaliation for his prior complaints of discrimination and retaliation. *Id.* According to Godfrey, Honeywell unexpectedly terminated him on August 17, 2018. Record Document 1 ¶ 32.

In contrast to Godfrey's claims, Honeywell maintains that Godfrey was terminated for failing to satisfy the terms of the March 2018 PIP and for his disciplinary record. Record Documents 33-16 at 3, ¶ 15; 33-18 at 2, ¶ 8. Honeywell details Godfrey's disciplinary history, which includes an oral warning in December 2005, a written warning in October 2013, a final warning in February 2015, and four PIPs.[1] Record Document 38-1 ¶ 6. Honeywell avers that Godfrey was placed on the final PIP because his performance fell short after his 2017 performance review. Record Document 33-16 at 3, ¶¶ 5–6. Honeywell argues that Godfrey did not timely receive job certifications, slept on the job, failed to complete daily tasks, did not work well with others, failed to stay within his assigned work area or communicate with his team where he was, worked on personal matters during work, was late or a no-show to work on several occasions, and failed to demonstrate an understanding of the equipment, processes, and procedures of the RWT plant. *Id.* at 2–7. During the period of the final PIP, March 6, 2018 to June 4, 2018, Ousley met with Godfrey on a weekly basis to discuss Godfrey's performance. Record Document 38-1 ¶ 33. Honeywell asserts that Godfrey failed five of the eight categories in the PIP. Record Document 33-9 at 38–39. Honeywell also contends that Godfrey's attendance issues increased after the period of his PIP. Record Document 33-9 at 2, 40–49.

In response, Godfrey disputes the underlying reasons for the final PIP and that he failed to satisfactorily complete it. Record Document 38-3 ¶ 8. Godfrey avows that during the weekly meetings, Ousley always informed him that he was satisfactorily completing the PIP. After the PIP period ended, Godfrey attests that Ousley told him that he successfully completed the PIP and awarded him a "Prize Closet Award" on June 6, 2018, in recognition for his performance. *Id.* ¶ 9. Additionally, Godfrey maintains that Honeywell failed to follow its progressive discipline policy

---

[1] The respective dates of each PIP are April 2009, March 2013, April 2014, and March 2018.

when it decided to terminate him because he never received notice that his performance was deficient by way of a final warning or the like. *Id.* ¶ 10.

Godfrey filed a charge of racial discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued Godfrey a Right to Sue Letter. Godfrey then filed the instant lawsuit. Record Document 1. Honeywell responded by filing the instant motion for summary judgment, which seeks dismissal of all claims.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the non-movant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes*

*v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the non-movant is so "weak or tenuous" that it could not support a judgment in the non-movant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

## LAW & ANALYSIS

Godfrey brings two claims under Title VII, that of racial discrimination and retaliation. Record Document 1. Godfrey also brings a claim of retaliation under the FMLA. *Id.* The Court will first analyze Godfrey's race discrimination claim before analyzing his retaliation claims together.

### I. Race Discrimination Claim

Title VII states that it shall be an "unlawful employment practice" for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where, as in the instant case, a plaintiff offers only circumstantial evidence of discrimination, the three-step *McDonnell Douglas* framework applies. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, a plaintiff must assert a prima facie case of discrimination, which, if established, raises

a presumption of discrimination. *Wallace*, 271 F.3d at 219. "The employer must then produce a legitimate nondiscriminatory reason for the adverse employment decision." *Id.* Once the employer produces such a reason, the presumption of discrimination dissipates, and the plaintiff must prove that the employer's given reason for the termination was pretextual and that he was discriminated against because of his protected status. *Id.* at 219–20.

### A.  Prima Facie Case

The first step in this framework requires Godfrey to present a prima facie case of race discrimination. A prima facie case of race discrimination requires a showing that the plaintiff (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). In this case, it is undisputed that Godfrey satisfies the first three elements because he is a member of a protected class, was qualified for the position, and was discharged. While Godfrey was not replaced by someone outside of his protected group, he contends that he can satisfy the fourth element because he was treated less favorably than Brett Guastella, Kerry Blackburn, Jill Burnnett, Robert Collins, and Brandon Robbins, his similarly situated white co-workers.

#### 1.  Similarly Situated Employees

"Employees are similarly situated when they 'held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories.'" *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 244 (5th Cir. 2019) (quoting *Lee v. Ks. Cty. So. Rwy. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009)). Importantly, the conduct the employer uses to justify the termination must be "nearly identical" to

that of the comparable employee who allegedly received a dissimilar employment decision. *Id.* Here, Honeywell states that it terminated Godfrey for failing to pass his PIP and for unsatisfactory job performance. Godfrey counters that Honeywell ignored instances of misconduct by five white co-workers. Record Document 38-3 ¶ 11. Godfrey points to Honeywell allegedly ignoring that Kerry Blackburn, Jill Burnett, and Brett Guastella were never certified for rover and that Guastella was also caught wearing headphones while at work.[2] Godfrey further alleges that Robert Collins was not disciplined for an acid spill on Honeywell's property and that Brandon Robbins was not disciplined for making scans with his telephone.

Godfrey has produced evidence that the proposed comparators held essentially the same job responsibilities and shared the same supervisor as Godfrey. However, he has not presented evidence sufficient to conclude that the other workers have "essentially comparable violation histories." *Garcia*, 938 F.3d at 244.

First, as Honeywell points out, Godfrey has failed to come forward with any evidence demonstrating that the proposed comparators had similar disciplinary records.

Second, aside from Brett Guastella, Godfrey does not allege the other four comparators engaged in more than one instance of discipline-worthy behavior. Honeywell does not assert that it terminated Godfrey for one or two isolated instances of misconduct. Honeywell maintains that it terminated Godfrey for failing to satisfactorily complete his PIP and showing a pattern of performance deficiencies, such as failing to timely gain required certifications, failing to foster teamwork with his peers, failing to demonstrate mastery of required skills, sleeping on the job,

---

[2] Ousley testified in his deposition that employees were not allowed to wear headphones for personal enjoyment while at work, but they could use headphones while completing their computer-based training. Record Document 38-5 at 11–12. Godfrey does not provide additional context as to the circumstances surrounding Guastella's alleged headphone usage.

leaving his assigned work area at inappropriate times, working on personal matters during work, and being late or a no-show to work without prior notice on multiple occasions. Although some of the alleged misconduct of the proposed comparators is similar to certain items in Godfrey's PIP, these proposed comparators do not have similar disciplinary records or alleged performance deficiencies such that a jury could conclude they received preferential treatment with respect to termination decisions.

Godfrey does allege that the discipline imposed on him was done so in a racially discriminatory manner because in Ousley's deposition, the only other employee that Ousley could remember putting on a PIP while at Honeywell was a black man, David.[3] Record Document 38-5 at 7–8. However, the mere fact that another black employee was issued a PIP is insufficient to show that Honeywell or Ousley issued PIPs based on racial animosity. Absent from the record is any evidence detailing the circumstances surrounding David's PIP or evidence documenting David's disciplinary history. Without something more, Godfrey cannot establish that Ousley or Honeywell disciplined black employees more severely under nearly identical circumstances. Godfrey thus has failed to establish a prima facie case of race discrimination. Therefore, Honeywell's motion for summary judgment [Record Document 33] is **GRANTED** as to Godfrey's race discrimination claim; this claim is **DISMISSED WITH PREJUDICE**.

## II.     Retaliation Claims

Title VII and the FMLA prohibit an employer from taking action against an employee for, among other things, opposing unlawful employment practices. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 2615; *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). "A retaliation claim that is premised on a pretextual rationale for dismissal is analyzed under the *McDonnell*

---

[3] David's last name is unknown to the Court.

*Douglas* framework." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013); *see McDonnell Douglas*, 411 U.S. at 802. Like a race discrimination claim, a plaintiff must first establish a prima facie case of retaliation. *Royal*, 736 F.3d at 400 (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007)). If the plaintiff can establish a prima facie case, the burden shifts to the defendant to provide a "legitimate non-retaliatory reason for the employment action." *Id.* The burden then shifts back to the plaintiff to "establish that the employer's stated reason is actually a pretext for unlawful retaliation." *Id.* At the pretext stage, the plaintiff must demonstrate "but-for causation."[4] *Garcia*, 938 F.3d at 243–44.

### A. Prima Facie Case

As stated above, the first step in the analysis requires Godfrey to establish a prima facie case of retaliation, which requires him to show that (1) he engaged in activity protected by Title VII or the FMLA; (2) he suffered an adverse employment action; and (3) a causal link exists between his protected activity and the adverse employment action. *Royal*, 736 F.3d at 400 (quoting *Turner*, 476 F.3d at 348); *Tatum v. S. Co. Servs., Inc.*, 930 F.3d 709, 713 (5th Cir. 2019). Because Godfrey was terminated, it is undisputed that he suffered an adverse employment action. Godfrey thus satisfies the second element of the prima facie case. The parties dispute the first element, whether Godfrey engaged in protected activity, and the third element, causation.

#### 1. Protected Activity

Under both the FMLA and Title VII, an employee engages in protected activity when he participates in activity protected by the FMLA or Title VII or opposes any unlawful employment practice prohibited by the same acts. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 2615. Godfrey asserts

---

[4] Godfrey treats his Title VII and FMLA claims as "[i]nextricably [i]ntertwined" and analyzes both claims under the *McDonnell Douglas* burden-shifting framework. Record Document 38-2 at 10. Accordingly, the Court will do the same, as they are connected and require the same analysis.

that he engaged in protected activity by (1) taking FMLA leave; (2) complaining to David Leathers ("Leathers"), Honeywell's Senior Operations Manager, in December 2016 that he believed Ousley was discriminating against him based on race and for taking FMLA leave; and (3) complaining to Ousley and Roberson in March 2018 that he believed the PIP was in retaliation for his prior complaints of racial discrimination and for taking FMLA leave. Record Document 38-2 at 11–15.

Honeywell does not dispute that Godfrey engaged in protected activity under the FMLA by taking authorized leave. Additionally, Honeywell does not genuinely dispute that Godfrey's alleged March 2018 complaint would qualify as protected activity under the FMLA and Title VII.[5] Honeywell, however, does argue that Godfrey's December 2016 complaint to Leathers does not qualify as protected activity because he made no mention of race or his protected leave.

In reference to the December 2016 complaint, Godfrey admits that he did not explicitly reference race or his protected leave in his conversation with Leathers. Record Document 38-3 ¶ 5. Godfrey avows that he thought it was obvious that he was complaining based on race because he identified white co-workers who he thought were receiving preferential treatment with overtime and vacation decisions. *Id.* Godfrey also contends that these white co-workers clearly did not just return from FMLA leave. *Id.*

Neither Title VII nor the FMLA require magic words to constitute protected activity, "but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (citing *Turner*, 476 F.3d at 348–49). Both statutes leave the word "oppose" undefined, so it should be given its ordinary meaning: "[t]o resist or antagonize . . . ; to contend against; to

---

[5] Honeywell does not mention this alleged activity in its motion. In its reply brief, Honeywell assumes *arguendo* that this complaint qualifies as protected activity. *See* Record Document 39 at 8–10.

confront; resist; withstand." *Crawford v. Metro. Gov't of Nashville and Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) (quoting Webster's New International Dictionary 1710 (2d ed. 1957)). Here, in December 2016, Godfrey lodged a complaint against Ousley because he thought Ousley was giving white co-workers who did not take FMLA leave preferential treatment regarding overtime opportunities and the granting of vacation benefits. Record Document 38-3 ¶ 5. In Godfrey's conversation with Leathers, Godfrey alleges that he identified white co-workers who were receiving overtime opportunities and being granted vacation benefits when he was not. *Id.*; Record Document 33-11 at 8–9. Additionally, Leathers raised Godfrey's FMLA leave as an issue in stating that Godfrey had just returned to work and was already requesting vacation. Record Document 33-11 at 11–13. Godfrey followed up his conversation with Leathers by emailing Roberson that he did not feel like he was being treated fairly since returning to work and that the work environment had become hostile. Record Document 33-12 at 2. Roberson responded that she would address Godfrey's concerns with Leathers and Ousley. *Id.* Although Godfrey did not specifically reference race or his protected leave as the reason for his December complaint, the Court finds that when viewing the evidence in a light most favorable to Godfrey, his December conversation with Leathers coupled with his emails to Roberson put Honeywell on notice that Godfrey thought Ousley was granting overtime and vacation benefits in an unlawful fashion. Accordingly, the Court finds that Godfrey's December 2016 complaint constituted protected activity under the FMLA and Title VII.

    2. <u>Causation</u>

To satisfy the third element of his prima facie case, Godfrey must present evidence of a causal connection between his protected activity and his termination. At this stage, Godfrey's burden is less stringent than the causation inquiry at the pretext stage, which requires but-for

causation.[6] *Garcia*, 938 F.3d at 243. It is well established that a plaintiff may show a causal link between his protected activity and an adverse employment action by showing close timing between the two. *Feist v. La., Dep't. of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). Generally, this timing must be very close to satisfy the causation prong without other evidence of retaliation. *Garcia*, 938 F.3d at 241. Even if a plaintiff is unable to show temporal proximity, he may still satisfy the causation prong "by providing additional evidence" of retaliation. *Id.* at 241 n.1. This other evidence can be "a chronology of events from which retaliation may plausibly be inferred." *Mooney v. Lafayette Cnty. Sch. Dist.*, 538 F. App'x 447, 454 (5th Cir. 2013) (quoting *Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997)).[7]

Here, the last protected activity that Godfrey allegedly engaged in was his March 2018 complaint that he thought the PIP was issued in retaliation for his December 2016 complaints about Ousley. It is undisputed that Godfrey was terminated about five months later. The Fifth Circuit has held that a five-month gap between protected activity and an adverse action is insufficient to show causation by itself. *Feist*, 730 F.3d at 454 (citing *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002)). However, Godfrey does not rely solely on temporal proximity to show causation, but rather, he has presented additional evidence of retaliation.

---

[6] Often, these two causation inquires overlap. Because the Court ultimately concludes that Godfrey has presented sufficient evidence to show but-for causation at the pretext stage, Godfrey necessarily can satisfy the lesser standard with the same evidence.

[7] In the First Amendment retaliation context, the Fifth Circuit has recognized that a plaintiff can satisfy the causation prong by establishing a chronology of events from which retaliation can be inferred despite some activity being too attenuated on its own. *See Brady*, 113 F.3d at 1424. The parties have not cited the Court to any law regarding whether the "chronology of events" theory applies in retaliation cases outside of the First Amendment context. On its own research, the Court finds that the Fifth Circuit has only implicitly considered the "chronology of events" theory in the retaliation context outside of the First Amendment. *See Mooney*, 538 F. App'x at 456–57. Despite no controlling authority, the Court finds no reason to limit the "chronology of events" theory to only the First Amendment context. Accordingly, the Court will apply it in this case.

First, Godfrey contends that the timeline of events between his return from leave in September 2016 and his termination in August 2018 show retaliatory causation. According to Godfrey, he started to experience discrimination soon after returning from his leave in September 2016. Record Document 38-3 ¶ 5. He claims that Ousley started to deny him overtime opportunities and vacation benefits, both of which he would grant to white employees who had not taken FMLA leave. *Id.* ¶ 5. Godfrey contends that he lodged a complaint against Ousley in December 2016. *Id.* Leathers, the supervisor who received Godfrey's complaint, informed Godfrey that he intended to have a discussion with Ousley regarding Godfrey's complaints. Record Document 33-11 at 15–20. Additionally, Godfrey sent a follow-up email to Roberson in which he conveyed his concerns about overtime and vacation and that he felt mistreated since returning from leave; Roberson responded that she would address Godfrey's concerns with Leathers and Ousley. Record Document 33-12 at 2. A reasonable jury could infer that Leathers and Roberson followed through on their statements and notified Ousley of Godfrey's complaints.

About three months later, Ousley, in coordination with Human Resources, issued Godfrey an LOE with expedited deadlines. Record Document 38-3 ¶ 6. Although the LOE was not considered disciplinary in nature, it noted that Ousley believed Godfrey's performance was deficient in certain areas. *Id.* ¶¶ 6–7; Record Documents 33-13; 33-15 at 5. Ousley then gave Godfrey a negative performance review for 2017 regarding his behavior, noting that "[c]orrective action [was] required." Record Document 33-17 at 4. On March 5, 2018, Ousley placed Godfrey on a PIP. Record Document 38-3 ¶ 8. Godfrey avows that he immediately complained to Ousley and Roberson that he thought the PIP was retaliation for his prior complaints. *Id.* According to Godfrey, Ousley never informed him that his performance was deficient during the PIP period. *Id.* ¶¶ 9–10. Instead, Godfrey declares that Ousley always told him that he was satisfactorily

completing the PIP.[8] *Id.* ¶¶ 9–10. Godfrey avers that his employment was suddenly terminated in August 2018 without any prior notice that his performance was deficient or that he failed to satisfactorily complete the PIP.

When viewing this timeline in a light most favorable to Godfrey and accepting his version of events as true, as the Court must on summary judgment, a jury could reasonably infer retaliatory causation. A factfinder could believe Godfrey's version of events and plausibly conclude that Ousley denied him overtime opportunities and vacation benefits soon after his return from leave and then started to lay the foundation for a performance-based termination after Godfrey lodged a complaint against Ousley. Moreover, a jury could reasonably conclude based on Godfrey's testimony that the PIP was a sham and not actually designed to improve Godfrey's performance because Ousley never provided him constructive feedback and, instead, told Godfrey that he was satisfactorily progressing with the PIP when, in fact, Ousley was documenting to the contrary. Further, the Court notes that the PIP required Ousley, whom Godfrey directly complained about, to make many subjective evaluations about Godfrey's performance. By accepting Godfrey's version of events, a jury could discredit Ousley's subjective evaluations in the PIP as being motivated by retaliatory animus and find that Godfrey did not display the performance deficiencies documented by Ousley. Based on the above timeline of events, a jury could reasonably infer causation.

Additionally, Godfrey claims that Honeywell's failure to follow its progressive discipline policy is further evidence of retaliatory animus. In the Fifth Circuit, "an employer's departure from typical policies and procedures" when terminating an employee can be evidence of discrimination.

---

[8] According to Honeywell, Ousley emailed Roberson Godfrey's PIP Tracking Chart on June 7, 2018, which showed that Godfrey failed the PIP. Record Document 33-9 at 38–41. However, Godfrey submits that nobody provided him with the PIP Tracking Chart or otherwise informed him that he was failing the PIP. Record Document 38-3 ¶ 9.

*Feist*, 730 F.3d at 455 (citing *Schroeder v. Greater New Orleans Fed. Credit Union*, 664 F.3d 1016, 1024 (5th Cir. 2011)). Although Godfrey has not submitted a formal Honeywell policy, he has submitted statements from Roberson that tend to show that Honeywell utilizes a progressive discipline policy. Record Document 33-15. For instance, when Roberson explained the policy to Godfrey in March 2017, she stated that an employee usually receives a written warning and then is placed on suspension before Honeywell progresses to termination. *Id.* at 52–64. She conveyed that Honeywell only skips steps for serious offenses. *Id.* Further, she stated that an employees' disciplinary record is only active for one year when deciding progressive discipline. *Id.*

Honeywell counters that it did follow progressive discipline by placing Godfrey on a PIP after a negative performance review; the PIP also contained language that Godfrey could be terminated for failing to complete it. Record Document 39 at 6. However, as stated above, a jury could believe Godfrey's account that the PIP was a sham because Ousley never provided him with feedback so that he could correct any alleged performance deficiency. According to Godfrey, he received no warning that his performance was progressing towards termination. Although Ousley documented Godfrey's alleged tardiness in an email chain to Roberson in June 2018, Godfrey denies ever receiving a warning about his performance after receiving the March 2018 PIP. Record Documents 33-9 at 43–49; 38-3 ¶¶ 9–10. Because Honeywell has not produced clear evidence to the contrary, the Court must accept as true Godfrey's declaration that Honeywell did not provide him notice of his alleged deficiencies before progressing to termination.[9] Based on the above, a jury could conclude that Honeywell violated its own policy by considering Godfrey's employment

---

[9] Notably, the email chain reflects that Godfrey should have received a final written warning. Record Document 33-9 at 43. Nevertheless, Godfrey claims that he did not receive one; Honeywell has not produced evidence that it did send a written warning prior to termination.

record outside of one year when disciplining him and skipping steps in the disciplinary process, including justifying his termination based on a sham PIP.

In sum, the Court finds that Godfrey has produced sufficient additional evidence of retaliation such that a reasonable jury could find a causal link.

### B. Legitimate, Non-Discriminatory Reason

Now that Godfrey has met his burden at the prima facie stage, the next step in the *McDonnell Douglas* framework requires Honeywell to offer a legitimate, non-discriminatory reason for Godfrey's termination. *Royal*, 736 F.3d at 400. This is a burden of production, not persuasion, and can "involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). As discussed above, Honeywell claims that it fired Godfrey for failing to satisfy the requirements of the March 2018 PIP and for his disciplinary history. In support, Honeywell cites to the results of Godfrey's PIP, which shows that his score fell below the passing threshold. Record Document 33-9 at 38–41. Additionally, Honeywell attaches an email chain that shows Ousley informing Roberson of Godfrey's recent no-shows and tardiness to work as further evidence of poor performance. *Id.* at 42–49. Also, Honeywell points to evidence that before Godfrey engaged in protected activity, prior supervisors had disciplined Godfrey for poor performance by the issuance of three PIPs and several formal warnings. Record Documents 33-4; 33-5; 33-6; 33-7. Lastly, a factfinder could credit Honeywell's version of the events and discredit Godfrey's version of the events, which would lend credence to Honeywell's reasons. Based on Fifth Circuit precedent, poor performance is a legitimate, non-discriminatory reason for termination. *See Watkins v. Tregre*, 997 F.3d 275, 282 (5th Cir. 2021). Thus, the Court finds that Honeywell has met its burden of production at the summary judgment stage.

### C. Pretext

Because Honeywell has produced a legitimate, non-discriminatory reason for its decision, the burden shifts back to Godfrey to demonstrate that the given reason is a pretext for retaliation. *Royal*, 736 F.3d at 400. At this stage, a plaintiff must demonstrate but-for causation, which requires "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). "[T]emporal proximity alone is insufficient to prove but for causation," *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007), but "[t]he combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment." *Garcia*, 938 F.3d at 244 (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999)). Among this other evidence may be evidence of disparate treatment or evidence "that the employer's proffered explanation is false or unworthy of credence." *Harville v. City of Houston, Miss.*, 945 F.3d 870, 879 (5th Cir. 2019) (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010)).

In *Shackelford*, the plaintiff, a black female, presented sufficient evidence of pretext, in addition to establishing temporal proximity, to create a genuine issue of material fact as to whether the defendant fired her in retaliation for activities protected by Title VII. 190 F.3d at 401 & 409. The plaintiff's evidence included (1) temporal proximity between her protected activity and termination; (2) her dispute of the events leading up to her termination; (3) her allegation that the defendant's employees warned her not to engage in the protected conduct; and (4) her claim that she and a white co-worker complained about each other to their supervisors, but only she received poor reviews for interpersonal skills. *Id.* The court concluded that the evidence created an issue of material fact because a reasonable jury could choose to believe plaintiff's account of the events

leading up to her termination, which would cast doubt on the defendant's proffered reason for the plaintiff's termination. *Id.*

In *Anderson v. Louisiana Department of Transportation and Development*, the Fifth Circuit found the following evidence sufficient to survive summary judgment: (1) temporal proximity of less than two months between the plaintiff's protected activity and her alleged constructive discharge; (2) similarly situated employees engaged in comparable behavior without reprimand; (3) the defendant's failure to follow its own disciplinary policy; and (4) allegations that the plaintiff's supervisor harassed her after she lodged a complaint against him. 836 F. App'x 304, 308 (5th Cir. 2020).[10] In contrast, the Fifth Circuit has found that evidence of only temporal proximity and positive performance reviews is insufficient to survive summary judgment. *United States ex rel King v. Solvay Pharms., Inc.*, 871 F.3d 318, 334 (5th Cir. 2017).

The Court finds that the facts in this case are more analogous to *Shackelford* and *Anderson* than to *Solvay Pharmaceuticals*. As discussed previously, Godfrey's evidence includes (1) a time gap of five months between his last protected activity and his termination; (2) a chronology of events after his return from leave and following his December 2016 complaint that a jury could reasonably conclude was suspicious; (3) his dispute of events leading up to his termination; and (4) Honeywell's alleged failure to follow its progressive discipline policy. Although the temporal proximity in this case is more attenuated than *Shackelford* and *Anderson*, Godfrey's additional evidence of pretext is similar in strength to the evidence in *Shackelford* and *Anderson* and substantially stronger than the evidence in *Solvay Pharmaceuticals*. For the reasons detailed in Section II.A.2, a jury could rationally accept Godfrey's version of the events and find that

---

[10] As an unpublished opinion, this case has no precedential value. Nevertheless, the Court finds it persuasive authority in this matter.

Honeywell's proffered reasons were false and that the real reason Godfrey was terminated was for engaging in activity protected by the FMLA and Title VII.

Ultimately, the Court finds that there are genuine disputes of material fact that remain outstanding as to whether Godfrey was fired in retaliation for activity protected by Title VII and the FMLA rather than for failing to complete his PIP and for a history of performance issues. When all justifiable inferences are drawn in Godfrey's favor, as they must be on a motion for summary judgment, the evidence submitted by both parties boils down to Godfrey's version of events versus Honeywell's version of events. *Anderson*, 477 U.S. at 255. Such a contest of credibility is "necessarily resolved in favor" of the non-movant at the summary judgment stage. *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998). Honeywell's motion for summary judgment [Record Document 33] is **DENIED** as to Godfrey's FMLA and Title VII retaliation claims.

## CONCLUSION

Based on the foregoing reasons, Honeywell's motion for summary judgment [Record Document 33] is **GRANTED IN PART** and **DENIED IN PART**. It is **DENIED** as to Godfrey's Title VII and FMLA retaliation claims. It is **GRANTED** as to Godfrey's Title VII race discrimination claim; this claim is **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED** this 17th day of February, 2022.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE